JUDGE BRODERICK

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

SARA DEVINCENZI as
administrator for the                                         INDEX NO.
ESTATE OF BENJAMIN
DEVINCENZI,                                                   _____

                           PLAINTIFF,

                                              **1 9 CV 6012**

                    vs

                                                    COMPLAINT
THE CITY OF NEW YORK, a municipal entity,           [JURY TRIAL
NEW YORK CITY POLICE OFFICER                         DEMANDED]
PAULE RIVERA, NEW YORK
CITY POLICE OFFICERS
"JOHN DOES 1-9,"

                           DEFENDANTS.

_____

        Plaintiff SARA DEVINCENZI as administrator for THE ESTATE OF BENJAMIN
DEVINCENZI, filing *pro se*, complaining of the defendants, respectfully allege as
follows:

## I. PRELIMINARY STATEMENT

1.      Plaintiff SARA DEVINCENZI as administrator for THE ESTATE OF BENJAMIN
DEVINCENZI (hereinafter "BENJAMIN DEVINCENZI") brings this action for
compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983
and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said
statutes and the Constitutions of the State of New York and the United States.

2.      Plaintiff BENJAMIN DEVINCENZI is a thin, nervous young man trying to move
on from unfortunate circumstances and personal adversities that led him to be incarcerated
as a teenager. He has paid his debt to society, and is currently living with his mother in their
family home in New York, New York, keeping his nose clean and trying to avoid trouble.

3.      However, on July 8, 2016, Plaintiff BENJAMIN DEVINCENZI was caught up in
circumstances not of his own making that thrust him into contact with the criminal justice
system, and caused him to sustain serious injuries at the hands of Defendant NEW YORK
CITY POLICE OFFICER PAULE RIVERA and other Defendants.

4.      On that date, Plaintiff BENJAMIN DEVINCENZI encountered an old
acquaintance, who invited Plaintiff to socialize at his home. Unbeknownst to Plaintiff, that
acquaintance was currently being sought by members of the New York City Police
Department, including but not limited to Defendant NEW YORK CITY POLICE
OFFICER PAULE RIVERA.

5.    On reaching his acquaintance's home, Plaintiff's acquaintance observed and fled from the police. Plaintiff, who weighs approximately 140 pounds and stands at 5'11", did not impede police in their pursuit, and instead immediately left the premises.

6.    Several blocks from the scene of the police action, Plaintiff BENJAMIN DEVINCENZI was seized, arrested, and brutalized by Defendant NEW YORK CITY POLICE OFFICER PAULE RIVERA and several Defendant NEW YORK CITY POLICE OFFICER "JOHN DOES." Defendant NEW YORK CITY POLICE OFFICER PAULE RIVERA swore out false charges against Plaintiff, alleging that he had physically interfered with police pursuit of his acquaintance, despite the near-impossibility of the very slight Plaintiff impeding multiple police officers in pursuit of a person of interest.

7.    Defendant NEW YORK CITY POLICE OFFICER PAULE RIVERA made multiple demonstrably false statements in support of the prosecution of Plaintiff, and claimed that no force was used in an incident where Plaintiff had teeth broken by Defendants, among other significant injuries. Defendant NEW YORK CITY POLICE OFFICER PAULE RIVERA also alleges that Plaintiff was arrested in a location over a block away from where witnesses and contemporaneous records indicate that Plaintiff was arrested.

8.    Following a conference with defense counsel in the criminal matter against Plaintiff, in which that counsel set forth some of these difficulties of proof, the New York County District Attorney's office withdrew readiness in this matter and offered an adjournment in contemplation of dismissal of the charges against Plaintiff, which Plaintiff accepted, in resolution of all charges against him.

9.    The Plaintiff now brings this case in a quest for answers as to why he was falsely arrested and brutalized without cause by Defendants.

## II. JURISDICTION

10.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

11.    Plaintiff BENJAMIN DEVINCENZI further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

12.    Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because the claims arose in this district.

## IV. JURY DEMAND

13.   Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

14.   The Plaintiff BENJAMIN DEVINCENZI is a resident of the City of New York, State of New York, and the County of New York.

15.   Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

16.   Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

17.   That at all times relevant to this action, the individually named Defendant NEW YORK CITY POLICE OFFICER PAULE RIVERA of the NYPD 6th Precinct ("Defendant POLICE OFFICER RIVERA") was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

18.   That at all times hereinafter mentioned, the Defendants POLICE OFFICERS "JOHN DOES 1-9" were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

19.   That at all times relevant to this action, the Defendants POLICE OFFICER RIVERA and NEW YORK CITY POLICE OFFICERS "JOHN DOES 1-9" (collectively, "Defendant POLICE OFFICERS;" individually, "Defendant POLICE OFFICER") either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

20.   Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said Defendants while acting within the scope of their employment by Defendant THE CITY OF NEW YORK.

21.   Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

## VI. FACTS COMMON TO ALL CLAIMS

22.   Plaintiff BENJAMIN DEVINCENZI is an American citizen and is currently a resident of the City, County and State of New York.

23.   Plaintiff BENJAMIN DEVINCENZI is slight young man, standing 5'11" in height, but weighing only approximately 140 pounds.

24.   As a teenager, Plaintiff BENJAMIN DEVINCENZI became addicted to drugs, and committed crimes to feed his habit. He has served all time that he was sentenced to for his previous crimes and is under no form of supervised release or monitoring.

25.   At all times relevant herein, Plaintiff BENJAMIN DEVINCENZI was in active treatment for his addiction.

26.   Plaintiff BENJAMIN DEVINCENZI lives in Downtown Manhattan with his mother, and tries to stay out of trouble.

27.   On July 8, 2016, Plaintiff BENJAMIN DEVINCENZI encountered an old acquaintance with whom he had been friends as a young man.

28.   Plaintiff BENJAMIN DEVINCENZI spoke with this acquaintance for a time, and when the acquaintance invited him to his home nearby, Plaintiff agreed.

29.   Unbeknownst to Plaintiff BENJAMIN DEVINCENZI, the acquaintance in question was in some manner being sought by members of the NYPD for questioning or arrest, and members of the NYPD, including Defendant POLICE OFFICER RIVERA and one Defendant "JOHN DOE" POLICE OFFICER were waiting outside of the acquaintance's apartment.

30.   Plaintiff BENJAMIN DEVINCENZI followed his acquaintance into his apartment building on MacDougal Street.

31.   The building in question has a front entrance, accessible from the street, and a rear entrance, under the main stairwell, leading out to back alleys.

32.   At the stairwell leading to the upper floors of his building, Plaintiff BENJAMIN DEVINCENZI's acquaintance instructed him to wait a moment, for reasons that were unclear to him at the time.

33.   A moment after the acquaintance went up the stairs, he was pursued back down the stairs by Defendant POLICE OFFICER RIVERA and other Defendant POLICE OFFICER.

34.   Plaintiff BENJAMIN DEVINCENZI stayed out of their way, and did not involve himself in any way in the chase in progress.

35. Plaintiff's acquaintance fled out the rear entrance of his building, pursued by Defendant POLICE OFFICERS.

36. Plaintiff BENJAMIN DEVINCENZI then exited out the front entrance of the building and proceeded to walk south towards Houston Street, not seeking to get involved in any way in the police pursuit.

37. As Plaintiff BENJAMIN DEVINCENZI approached Houston Street, he was stopped by Defendant POLICE OFFICER RIVERA, who rudely demanded information from him.

38. Plaintiff BENJAMIN DEVINCENZI attempted to get out his cellular phone to record the encounter, and Defendant POLICE OFFICER RIVERA attempted to grab Plaintiff's phone.

39. When Plaintiff put his phone in his pocket, rather than allow Defendant POLICE OFFICER RIVERA to seize it without justification, Defendant POLICE OFFICER RIVERA punched Plaintiff in the face with great force.

40. Plaintiff BENJAMIN DEVINCENZI put his hands up to indicate a lack of resistance, and asked Defendant POLICE OFFICER RIVERA's partner, Defendant POLICE OFFICER "JOHN DOE," in sum and substance, "did you see that?"

41. The Defendant POLICE OFFICER "JOHN DOE" pretended not to see anything, and did not intervene.

42. Other Defendant "JOHN DOE" POLICE OFFICERS arrived on the scene and asked Defendant POLICE OFFICER RIVERA why he was attacking the Plaintiff.

43. Defendant POLICE OFFICER RIVERA paused for a few moments, apparently at a loss for what to say, and then falsely claimed, in sum and substance, that Plaintiff BENJAMIN DEVINCENZI slammed a door in his face.

44. The other Defendant "JOHN DOE" POLICE OFFICERS then proceeded to additionally attack Plaintiff BENJAMIN DEVINCENZI.

45. Defendant POLICE OFFICER RIVERA and Defendant "JOHN DOE" police officers struck and kicked the Plaintiff, causing him to sustain numerous injuries, and breaking several of his teeth.

46. Plaintiff BENJAMIN DEVINCENZI did not resist police officers or retaliate in any way.

47.   Plaintiff BENJAMIN DEVINCENZI had not engaged in any activity or speech which would justify Defendants' uses of force against him.

48.   Individuals witnessed this altercation, which took place in the vicinity of the corner of MacDougal and Houston streets, and a local bartender made a note of the police mobilization in his employer's incident log.

49.   Multiple police vehicles came to the scene, and Plaintiff BENJAMIN DEVINCENZI was taken into custody.

50.   Despite his requests, Plaintiff BENJAMIN DEVINCENZI was not provided with medical attention for his injuries.

51.   Plaintiff BENJAMIN DEVINCENZI was transported to the NYPD 6th Precinct, and thereafter to Manhattan Central Booking, before he was arraigned on a charge of Obstruction of Governmental Administration, NY PL §195.05, a Class A Misdemeanor punishable by up to a year in jail.

52.   Plaintiff BENJAMIN DEVINCENZI was held overnight in custody by Defendants.

53.   At arraignment, Plaintiff BENJAMIN DEVINCENZI learned that Defendant POLICE OFFICER RIVERA had sworn a patently false complaint against him.

54.   Defendant POLICE OFFICER RIVERA falsely alleged that Plaintiff BENJAMIN DEVINCENZI obstructed his pursuit of Plaintiff's acquaintance, even though Plaintiff was at no point within the path of pursuit at issue, since the pursued individual fled out of a door that Plaintiff BENJAMIN DEVINCENZI was not in a position to obstruct.

55.   Defendant POLICE OFFICER RIVERA falsely alleged that Plaintiff BENJAMIN DEVINCENZI physically obstructed him and other officers from pursuing the pursued individual for 15 seconds, despite the practical impossibility of the very slightly-built Plaintiff obstructing multiple police officers in pursuit for any length of time, let alone 15 seconds.

56.   Defendant POLICE OFFICER RIVERA's allegations against Plaintiff in the criminal complaint were not consistent with the claims that he made to his fellow Defendant "JOHN DOE" POLICE OFFICERS to induce them to join in assaulting Plaintiff.

57.   Defendant POLICE OFFICER RIVERA falsely alleged that Plaintiff BENJAMIN DEVINCENZI was arrested inside of a building on MacDougal street, when he in fact assaulted an arrested Plaintiff out of doors in a different location.

58.   In the omniform arrest report for this matter, Defendant POLICE OFFICER RIVERA falsely alleged that no force was used against Plaintiff BENJAMIN DEVINCENZI.

59.   Following his arraignment in this matter, Plaintiff BENJAMIN DEVINCENZI was released on his own recognizance and sought medical attention for his injuries.

60.   As Plaintiff BENJAMIN DEVINCENZI was unable to receive his prescribed medications over the period of his seizure by Defendants, he was in unusual discomfort throughout his detention.

61.   Following several appearances in court, Plaintiff BENJAMIN DEVINCENZI's case was set for trial.

62.   On the day of trial, Plaintiff BENJAMIN DEVINCENZI's defense counsel provided various disclosures to the prosecution which showed that Defendant POLICE OFFICER RIVERA had deceived prosecutors as to various points regarding this matter.

63.   On review of these disclosures, the prosecutor withdrew readiness and requested an adjournment to investigate.

64.   Following this adjournment, the New York County District Attorney's Office offered Plaintiff BENJAMIN DEVINCENZI an adjournment in contemplation of dismissal of all charges against him. Plaintiff agreed, and the charges against him have since been dismissed and sealed.

65.   Upon information and belief, the charge tendered by the Defendant Police Officers on Plaintiff BENJAMIN DEVINCENZI can be characterized as a "contempt of cop" or "cover" charge, meaning a charge that can be levied by officers against individuals whom the officers desire to punish but who have not committed actual crimes or offenses.

66.   Upon information and belief, the three most commonly charged "contempt of cop" or "cover charge" charges utilized by police in New York City are Disorderly Conduct, Obstruction of Governmental Administration, and Resisting Arrest, since those three charges can be levied by officers in the absence of physical evidence or witness testimony of wrongdoing.

67.   Upon information and belief, Defendant Police Officers were aware at the time that they lacked probable cause to arrest Plaintiff BENJAMIN DEVINCENZI for any crime or violation.

68.  Upon information and belief, Defendant Police Officers arrested Plaintiff BENJAMIN DEVINCENZI even though they knew that they lacked probable cause to arrest Plaintiff BENJAMIN DEVINCENZI.

69.  Upon information and belief, Defendant Police Officers arrested Plaintiff BENJAMIN DEVINCENZI in the absence of probable cause in an attempt to justify their baseless seizure of Plaintiff BENJAMIN DEVINCENZI.

70.  Upon information and belief, Defendant Police Officers arrested Plaintiff BENJAMIN DEVINCENZI in the absence of probable cause in an attempt to justify their unnecessary and excessive applications of force Plaintiff BENJAMIN DEVINCENZI.

71.  Upon information and belief, Defendant Police Officers issued a summons to Plaintiff BENJAMIN DEVINCENZI in the absence of probable cause due to unprovoked animosity towards Plaintiff BENJAMIN DEVINCENZI.

72.  Upon information and belief, Defendant Police Officers arrested Plaintiff BENJAMIN DEVINCENZI in the absence of probable cause in order to meet quantitative productivity goals promulgated by their supervisors.

73.  Upon information and belief, Defendant Police Officers arrested Plaintiff BENJAMIN DEVINCENZI because they felt that Plaintiff BENJAMIN DEVINCENZI somehow disrespected his authority.

74.  Plaintiff BENJAMIN DEVINCENZI was charged with one of the three most common "contempt of cop" charges.

75.  As a result of the foregoing, Plaintiff BENJAMIN DEVINCENZI sustained, *inter alia,* physical injuries, mental injuries, emotional distress, embarrassment, humiliation and deprivation of his constitutional rights.

### FIRST CLAIM FOR RELIEF
### DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

76.  Plaintiff BENJAMIN DEVINCENZI repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

77.  All of the aforementioned acts of the Defendant CITY OF NEW YORK and Defendant Police Officers, their agents, servants and employees, were carried out under the color of state law.

78.  All of the aforementioned acts deprived Plaintiff BENJAMIN DEVINCENZI of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

79.  The acts complained of were carried out by the aforementioned individual

Defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

80.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

81.     The Defendant Police Officers and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

82.     As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time; he was put in fear for his safety and he was humiliated, without probable cause.

83.     As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputations and standing within his community.

84.     As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

85.     Plaintiff BENJAMIN DEVINCENZI repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

86.     Plaintiff BENJAMIN DEVINCENZI was subjected to illegal, improper and false arrest by the Defendant Police Officers.

87.     Plaintiff BENJAMIN DEVINCENZI was taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

88.     As a result of the foregoing, Plaintiff BENJAMIN DEVINCENZI's liberties were restricted for an extended period of time.

89.     As a result of the foregoing, Plaintiff BENJAMIN DEVINCENZI was put in fear for his own safety and humiliated without probable cause.

90.     As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## THIRD CLAIM FOR RELIEF
## EXCESSIVE USE OF FORCE UNDER 42 U.S.C. §1983

91.   Plaintiff BENJAMIN DEVINCENZI repeats reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

92.   Plaintiff BENJAMIN DEVINCENZI was struck and kicked by Defendant POICE OFFICERS, causing various and serious injuries to his person, including but not limited to broken teeth.

93.   As a result of the foregoing, Plaintiff BENJAMIN DEVINCENZI was forced to seek medical attention for his swollen hands.

94.   Plaintiff BENJAMIN DEVINCENZI was struck and kicked by Defendant POLICE OFFICERS in the absence of any factors justifying use of force against Plaintiff BENJAMIN DEVINCENZI.

95.   As a result of the foregoing, Plaintiff BENJAMIN DEVINCENZI suffered injuries, pain and exacerbation of prior injuries.

96.   Plaintiff BENJAMIN DEVINCENZI was subjected to excessive force by one or more individual Defendant Police Officers, in violation of his rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

97.   As a result of the above constitutionally impermissible conduct, Plaintiff BENJAMIN DEVINCENZI was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to their reputations and standing within their community.

98.   As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

99.   Plaintiff BENJAMIN DEVINCENZI repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

100.   The Defendant Police Officers and Defendant CITY OF NEW YORK had an affirmative duty to intervene on Plaintiff BENJAMIN DEVINCENZI's behalf to prevent the violation of his constitutional rights.

101.   The individual Defendant Police Officers failed to intervene on Plaintiff

BENJAMIN DEVINCENZI's behalf to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

102. The individual Defendant Police Officers failed to intervene on Plaintiff BENJAMIN DEVINCENZI 's behalf to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which the plaintiff's rights were violated by their affirmative conduct.

103. As a result of the aforementioned conduct of the individual Defendants, Plaintiff BENJAMIN DEVINCENZI's constitutional rights were violated.

104. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputation and standing within his community.

105. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983

106. Plaintiff BENJAMIN DEVINCENZI repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

107. Defendants instigated and issued legal process to place Plaintiff BENJAMIN DEVINCENZI under arrest.

108. Defendants arrested Plaintiff BENJAMIN DEVINCENZI in order to obtain collateral objectives outside the legitimate ends of the legal process.

109. These collateral objectives outside the legitimate ends of the legal process include but are not limited to: the Defendant Police Officers' personal satisfaction and/or subjective sense(s) of vindication for Plaintiff BENJAMIN DEVINCENZI's putative lack of respect for the Defendant Police Officers' authority.

110. These collateral objectives outside the legitimate ends of the legal process include but are not limited to: the Defendant Police Officers' desire to putatively justify their wrongful uses of force against the Plaintiff.

111. These collateral objectives outside the legitimate ends of the legal process include but are not limited to: the Defendant Police Officers' desire to show enforcement activity, i.e., arrests, in order to meet numerical targets for same, even in the absence of probable cause to arrest the Plaintiff.

112. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputation and standing within his community.

113. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

114.

## SIXTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM
## UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. § 1983

115. Plaintiff BENJAMIN DEVINCENZI repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

116. Defendants arrested and incarcerated Plaintiff BENJAMIN DEVINCENZI in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiffs' liberty, well-being, safety and constitutional rights.

117. Upon information and belief, the arrest of Plaintiff BENJAMIN DEVINCENZI was unlawful and lacked probable cause.

118. Upon information and belief, Plaintiff BENJAMIN DEVINCENZI was caused to face a false criminal charge to justify his wrongful seizure and detainment by the Defendant Police Officers.

119. Upon information and belief, the wrongful arrest and detainment of Plaintiff BENJAMIN DEVINCENZI was not undertaken by the Defendant Police Officers in furtherance of their duties, or otherwise privileged.

120. Upon information and belief, the arrest and detainment of Plaintiff BENJAMIN DEVINCENZI was undertaken wholly to clothe the wrongful actions of the Defendant Police Officers under color of law.

121. Upon information and belief, the arrest and detention of Plaintiff BENJAMIN DEVINCENZI was undertaken to meet the arrest quotas imposed upon the Defendant Police Officers by Defendant CITY OF NEW YORK and/or its agents.

122. As a result of the aforementioned conduct of the Defendant CITY OF NEW YORK and the individual Defendant Police Officers, Plaintiff BENJAMIN DEVINCENZI's constitutional rights were violated.

123. The acts complained of were carried out by the aforementioned individual Defendant Police Officers in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

124. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

125.  The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

a)  wrongfully arresting individuals without probable cause due to perceived lack of respect for the police officer (i.e., "testilying" "contempt of cop" arrests);

b)  wrongfully arresting individuals without probable cause in attempts to justify excessive uses of force (i.e. "testilying" "contempt of cop" "cover charge" arrests);

c)  wrongfully arresting innocent persons in order to meet quantitative "productivity goals" (i.e., "testilying" and arrest quotas).

d)  wrongfully arresting persons without w without probable cause due to perceived lack of respect for the police officer; in order to meet quantitative "productivity goals" (i.e., "testilying" "contempt of cop" arrests used to satisfy arrest quotas).

126.  The particular arrest of the Plaintiff is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because the Plaintiff's arrests was undertaken in the absence of probable cause to arrest.

127.  The particular arrest of the Plaintiff is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because they were undertaken in a manner which indicated that the individual Defendant Police Officers who participated in the Plaintiff's arrests made the determination to arrest the Plaintiff before determining why the Plaintiff should be arrested.

128.  The particular arrest of the Plaintiff is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests.

## THE NYPD HAS A CONTINUING CUSTOM, PRACTICE, OR POLICY OF ARRESTING INDIVIDUALS IN ORDER TO FULFILL ARREST QUOTAS

129.  On information and belief, the NYPD has various tacit and explicit numerical quota requirements applicable to precincts as well as to individual officers, requiring those precincts and officers to make a specific number of arrests per month, or face professional repercussions.

130.  This quota system is illegal, because it encourages and forces the

precincts and officers to arrest innocent people in order to fulfill the quotas.

131. Indeed, the use of an explicit quota system has been documented at precincts in Brooklyn.[1]

132. This quota system is enforced by the very top levels of the NYPD through the Department's Compstat system.

133. In a full-page ad on page 15 of the May 7, 2012 edition of the New York Daily News, The Patrolmen's Benevolent Association made clear that the quota pressure comes from the top. Referring to these quotas, the ad is headlined: "Don't Blame the Cop, Blame NYPD Management."

134. The NYPD uses Compstat to track such enforcement actions statistically.

135. What street-level police officers do is a direct result of these command- level policies.

136. As the New York Daily News reported, NYPD supervisors have given explicit instructions to street-level enforcement personnel that quantity, not quality, matters – promulgating a policy that comes from the very top of the NYPD hierarchy. [2]

137. Individual officers have stepped forward to denounce the NYPD's use of quotas, which are illegal.[3]

138. Officers that refuse to meet illegal quotas have been subject to adverse employment actions and other retribution from their superiors.[4]

139. The NYPD officially denied that it maintained and enforced quotas throughout the Bloomberg/Kelly administration, but this was demonstrably false.

---

1       Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77th Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010. Article incorporated by reference herein and available online at http://articles.nydailynews.com/2010-11-08/local/27080554_1_memos-quotas- seat-belt.
2       Parascandola, Rocco, "Cops On Tape Pushing Arrest Quotas: NYPD Lt. Janice Williams captured on tape pushing for more busts, but brass says there's no quotas," The New York Daily News, March 3, 2011.
3       Parascandola, Rocco, "Cops On Tape Pushing Arrest Quotas: NYPD Lt. Janice Williams captured on tape pushing for more busts, but brass says there's no quotas," The New York Daily News, March 3, 2011; Parascandola , Rocco, "An ex-Bronx cop Ex-Cop Sues City, Says Quotas Led to Firing: Ex-Bronx cop Vanessa Hicks suing city, says quotas led to axing,"
The New York Daily News, May 2, 2011; Parascandola, Rocco, "79th Precinct cops claim retribution: Nine officers say poor evaluations are payback from commander," The New York Daily News, April 10, 2012.
4       See id.

140. The existence of this unconstitutional arrest quota custom and/or policy was shown at that time by the posting of lists of quantitative targets for various forms of summonses at the 77th Precinct in Brooklyn .[5]

141. The existence of the aforesaid unconstitutional arrest quota custom and/or policy was further shown at that time by tape recordings acquired by WABC- TV/DT, in which a 41st precinct sergeant explains that each of his officers is held to a twenty summons per month, and one arrest per month, enforcement quota.[6]

142. The existence of the aforesaid unconstitutional arrest quota custom and policy was also demonstrated at that time by the tape recordings acquired by the Village Voice, including, among other admissions, an 81st precinct sergeant telling his officers to make quota-driven arrests as directed by their superiors even if they must void the arrests at the end of their shifts.[7]

143. Even though the NYPD claims that quotas are not used, NYPD Commissioner James O'Neill warned his supervisors in May of this year that he would take disciplinary action against any commanders promulgating quotas or retaliating against individuals for reporting quotas.[8]

144. On information and belief, the quota system remains alive and well under the DeBlasio/O'Neill administration, despite continuing protests that it either never existed or has ceased to exist.

145. On information and belief, Defendants' decision to arrest Plaintiff BENJAMIN DEVINCENZI in the absence of probable cause indicates that his arrest was motivated, in whole or in part, by quotas.

## THE NYPD TOLERATES AND CONDONES WIDESPREAD POLICE PERJURY

---

5      Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77[th] Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010, available online at http://articles.nydailynews.com/2010-11-08/local/27080554_1_memos-quotas-seat-belt

6      Hoffer, Jim, "NYPD Officer Claims Pressure To Make Arrests," WABC News, March 3, 2010, available online at http://abclocal.go.com/wabc/story?section=news/investigators&id=7305356

7      Rayson, Graham, "The NYPD Tapes, Part 2: Bed-Stuy Street Cops Ordered: Turn This Place Into A Ghost Town." Village Voice, May 11, 2010, available online at http://www.villagevoice.com/2010-05-11/news/nypd-tapes- part-2-bed-stuy/

8 Andrew Keshner and Thomas Tracy, "NYPD chief James O'Neill pledges wrath against quota-chasing cops," N.Y. Daily News, May 12, 2017, available online at http://www.nydailynews.com/new-york/nypd-chief-james-o-neill-pledges-wrath- quota-chasing-cops-article-1.3159425

146.  Defendant PAULE RIVERA and his fellow Defendant POLICE OFFICERS lacked cause to arrest Plaintiff BENJAMIN DEVINCENZI, and in order to cover for this, fabricated false claims against him to justify their assault on his person by placing him under arrest.

147.  NYPD policy rewards arrests that are based on false statements in criminal complaints sworn by NYPD officers.

148.  As United States District Court Judge Jack Weinstein wrote: "Informal inquiry by [myself] and among the judges of this court, as well as knowledge of cases in other federal and state courts ... has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department."[9]

149.  By its nature, the true extent of police perjury has not been documented. The Mollen Commission in the 1990's found that police perjury was so pervasive that the police even had a word for it: "testilying."[10]

150.  Police perjury often involves lying about matters that are outcome determinative in litigation, and that go to the heart of a defendant's guilt or innocence.[11]

151.  Certain types of arrests occur with such frequency that the pattern and practice of police perjury has been at least partially exposed.

152.  The NYPD has taken no steps to disincentivize – much less punish – the practice of perjury that underlies these arrests. Indeed, faced with a continuing flood of litigation, the NYPD and Defendant CITY OF NEW YORK have instead increased their focus on defeating litigation,[12] and have opted to intrude upon the office of the prosecutor to attempt to induce individuals to admit probable cause to arrest in exchange for conditional dismissal of charges.[13]

---

9       Marzulli, John, "Judge Jack Weinstein rips NYPD on false arrests as brothers sue for $10M over wrongful narcs bust," The New York Daily News, Nov. 30, 2009, available online at http://www.nydailynews.com/news/crime/judge- jack-weinstein-rips-nypd-false-arrests-brothers-sue-10m-wrongful-narcs-bust- article-1.433711

10      Cunningham, Larry, "Taking on Testilying: The Prosecutor's Response to In-Court Police Deception," *Criminal Justice Ethics* Winter/Spring 2009.

11      Id.

12 *See, e.g.,* Yoav Gonen, Shawn Cohen and Kirstan Conley, "DeBlasio Forming Legal Team To Fight 'Frivolous Cop Suits,'" N.Y. Post, Jan. 31, 2015, available online a*t* http://nypost.com/2015/01/31/de-blasio-forming-legal-team-to-fight- frivolous-cop-suits/

13 *See,* Rocco Parascandola and Stephen Brown, "EXCLUSIVE: NYPD turns 'prosecutor' to fend off lawsuits making civil rights advocates uneasy," N.Y. Daily News, Jan. 11, 2016, available online a*t* http://www.nydailynews.com/new-york/exclusive-nypd-turns-prosecutor-fend-lawsuits-article-1.2491836.

153.  In the first case to be prosecuted to trial by the NYPD legal bureau, the defendant was acquitted after video evidence contradicted the sworn statements and testimony of the arresting officers. In that case, the presiding Manhattan Criminal Court Judge, Stephen Antignani, admonished the NYPD attorney prosecuting the defendant, noting that what was depicted on videos of the incident at issue was "totally different from what your officers, who on first blush came across quite credibly, what they told me happened[.]"[14]

154.  Despite this recent and public embarrassment, Defendant CITY OF NEW YORK continues to deny its police department's continuing perjury problem.

**155.**  In a recent panel discussion, Lawrence Byrne, the NYPD's top legal official, stated that seventy-three (73) NYPD officers ""been fired or forced out of the department in the last five years for either perjury or making a false statement[.]" He stated that this did not constitute "a widespread perjury problem[,]" even though it means that **the NYPD has, on average, terminated more than one officer each month for perjury and false statements for the** last five years.[15]

156.  Defendant CITY OF NEW YORK has had repeated notice of the tendency of police officers such as the Defendant POLICE OFFICERS to initiate prosecutions based on false statements, for personal and professional purposes, and has declined to take meaningful action to stop this misconduct. Defendant CITY OF NEW YORK's police department's top legal official even declines to consider it a problem.

157.  There is a nexus between arrest quotas and the NYPD's toleration of police perjury: **police under pressure to make their quota of arrests make false arrests based on perjured accusations in order to do so.**[16]

158.  Plaintiff's arrest was enabled by Defendant CITY OF NEW YORK's condonation of police perjury as a means to cover up wrongful arrests, including "contempt of cop" and "cover charge" arrests.

---

14 Jacobs, Shayna, "Judge Acquits Black Lives Matter Activist in NYPD Prosecution Case," N.Y. Daily News, October 2, 2017, available online at http://www.nydailynews.com/new-york/judge-acquits-blm-activist-nypd-prosecution-case-article-1.3537057

15 Goldstein, Joseph, "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," New York Times, October 10, 2017, available online at https://www.nytimes.com/2017/10/10/nyregion/he-excelled-as-a-detective-until-prosecutors-stopped-believing-him.html?_r=0

16      Marzulli, John, "We fabricated drug charges against innocent people to meet arrest quotas, former detective testifies," The New York Daily News, October 13th 2011, available online at http://www.nydailynews.com/news/crime/fabricated-drug-charges-innocent- people-meet-arrest-quotas-detective-testifies-article-1.963021

159.  As a result of the aforementioned conduct of the Defendant CITY OF NEW YORK and the individual Defendant Police Officers, Plaintiff BENJAMIN DEVINCENZI 's constitutional rights were violated.

160.  As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, Plaintiff BENJAMIN DEVINCENZI was falsely arrested and incarcerated.

161.  As a result of the above constitutionally impermissible conduct, Plaintiff BENJAMIN DEVINCENZI was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to his reputation and standing within his community.

162.  As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION

163.  Plaintiff BENJAMIN DEVINCENZI repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

164.  At or around the time that Plaintiff BENJAMIN DEVINCENZI was seized and assaulted by Defendant POLICE OFFICERS, he was attempting to engage in protected expressive activity, to wit, recording a public interaction with police officers.

165.  Defendant Police Officers took adverse action against Plaintiff BENJAMIN DEVINCENZI.

166.  Defendant Police Officers took adverse actions against Plaintiff BENJAMIN DEVINCENZI by using wrongful and unjustified force upon Plaintiff.

167.  Defendant Police Officers took adverse action against Plaintiff BENJAMIN DEVINCENZI by unlawfully arresting him without probable cause.

168.  Defendant Police Officers took adverse action against Plaintiff BENJAMIN DEVINCENZI by falsely accusing him of crimes and violations.

169.  Defendant Police Officers took adverse action against Plaintiff BENJAMIN DEVINCENZI by taking Plaintiff into Police custody and detaining him against his will.

170.  Upon information and belief, there was a causal connection between the protected speech and conduct engaged in by Plaintiff BENJAMIN DEVINCENZI and the adverse actions taken by the Defendant Police Officers.

171.  The causal connection between the protected speech and conduct engaged in by Plaintiff BENJAMIN DEVINCENZI and the adverse actions taken against Plaintiff by Defendant Police Officers was demonstrated by, among other

things, the fact that the Defendant Police Officers used excessive force against Plaintiff
BENJAMIN DEVINCENZI in the absence of justification after he attempted to record
them.

172. The causal connection between the protected speech and conduct engaged in by
Plaintiff BENJAMIN DEVINCENZI and the adverse actions taken against Plaintiff by
Defendant Police Officers was demonstrated by, among other things, patently false
accusations levied against Plaintiff by Defendant POLICE OFFICERS.

173. The causal connection between the protected speech and conduct engaged in by
Plaintiff BENJAMIN DEVINCENZI and the adverse actions taken against Plaintiff by
Defendant Police Officers was demonstrated by, among other things, the absence of
probable cause justifying Plaintiff BENJAMIN DEVINCENZI's arrest.

174. The Plaintiff was falsely accused of crimes and violations and was taken into
Police custody and detained against his will.

175. The above-described charge was a pretext intended to justify the Plaintiff's illegal
arrest.

176. The actions of Defendants heretofore described, constituted unlawful detention,
imprisonment, assault and battery and malicious abuse of process and were designed to
and did cause bodily harm, pain and suffering both in violation of the Plaintiff's
Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States
Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of
New York and in direct retaliation for the Plaintiff's exercise of their civil and
constitutional rights of free speech, free expression and expressive association as
guaranteed by First and Fourteenth Amendments to the United States Constitution as well
as the Constitution of the State of New York.

177. That the conduct and actions of Defendants acting under color of State law, in
assaulting, detaining, imprisoning and maliciously issuing process to the Plaintiff, were
done intentionally, maliciously, and/or with a reckless disregard for the natural and
probable consequences of their acts, were done without lawful justification, and were
designed to and did cause bodily harm, pain and suffering both in violation of the
Plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983, the United States
Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the
State of New York and in direct retaliation for the Plaintiffs' exercise of their civil and
constitutional rights of free speech, free expression and expressive association as
guaranteed by First and Fourteenth Amendments to the United States Constitution as
well as the Constitution of the State of New York.

178. Defendants deprived the Plaintiff of his liberty both in violation of his civil and
constitutional rights, as guaranteed under 42 U.S.C. §1983 and set forth in

the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiffs' exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

179. Defendants' actions were undertaken under color of law and would not have existed but for Defendants using their official power.

180. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputation and standing within his community.

181. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

182. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff BENJAMIN DEVINCENZI.

183. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff BENJAMIN DEVINCENZI's constitutional rights.

184. All of the foregoing acts by defendants deprived Plaintiff BENJAMIN DEVINCENZI of federally protected rights, including, but not limited to, the right:

A. Not to be deprived of liberty without due process of law;

B. To be free from seizure and arrest not based upon probable cause;

C. To be free from unwarranted and malicious criminal prosecution;

D. To be free from malicious abuse of process;

E. To receive equal protection under the law.

185. As a result of the foregoing, Plaintiff BENJAMIN DEVINCENZI is entitled to compensatory damages and punitive damages against the Defendants in amounts to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:      New York, New York

June 27, 2019

Respectfully submitted,

SARA DEVINCENZI, Pro Se
185 W. Houston St. 4C
New York, New York 10014
212-748-9791

21